Good morning, Your Honors. Thank you. May it please the Court, Devin Burstein on behalf of Mr. Wilson. As the Supreme Court explained in Riley, the Fourth Amendment warrant requirement is not an inconvenience to be somehow weighed against claims of police efficiency. And it's for that reason that the answer to the question of what police must do before searching email files based on a hash match is simple. Get a warrant. Can I ask, is your concern that there wasn't enough evidence introduced at the evidentiary hearing to, I guess, flesh out just how reliable the hash matches, that's going to be a mouthful to say, how reliable they are? Or are you saying that even if we had evidence, expert percent of the time, if you have one of those matches, it is exactly the same image, not even a little pixel is different. If that were the state of the evidence, is your position still the same, that a warrant is required? We're saying both, and let me answer both. So the simple answer to your first part of your question was yes, the evidentiary part. The second part of your answer is, the second part is also yes, and here's why. Here's the salient, the most important fact, and it's will apply generally, but I'll stick to the specifics. So the most salient fact, in terms of private search doctrine, if we're going to be going right there, is that at some unknown time in the past, an unknown Google employee, some unknown level of training, looked at image files belonging to an unknown person, not Mr. Wilson. The expectation of privacy, the Fourth Amendment protects people, not places, that's what Kat says. It's personal. So to amend Judge Watford's question, suppose that these were files that had already been found to be child pornography, in another case or by some expert person, and so that the original determination was not in any way in question, then what? And the same hashtag protocol was fired, was used. It would not trigger the private search exception, and here's why. Because the private search, what we know from Jacobson, is that the private search exception applies once your expectation of privacy has been frustrated. It's personal. The Jacobson, it's the defendant's package. Walter, it's the defendant's film canisters. Every case would be, it's the defendant's stuff, his or her Fourth Amendment chattel. If there's a search of someone else's stuff, never in the history of the Fourth Amendment has this Court or the Supreme Court ever said that. I don't think of it that way. I think of it like this. You would concede that if a Google employee had themselves opened the file and looked at it and tagged it as child pornography, then we're, the government wins, right? Are we talking about Mr. Wilson's files? Yes. If the, we, that would make our private search doc, under the private search doctrine, but not our property claim. Okay. Well, let's put aside the property claim. But you wouldn't care, at that point it wouldn't care whether they, it wouldn't matter whether they decided it was child pornography or not. I mean, in other words, the determination of what's child pornography is at least, you know, somewhat in question. But the privacy issue is kind of disconnected from that. Or is it? I mean, I don't understand this case law that says, or these statements and these opinions that say, well, because it's contraband, as long as it's 100 percent contraband, it's okay. Where does that come from? That comes from the plain view doctrine. And it's an interesting question. I've been struggling with it too. And Judge Watchford, look, I will get back to your question. But it comes from the plain view doctrine. And what we think about private search doctrine, we think about it so closely related to third party doctrine. But it's really the child of third party doctrine and plain view doctrine. And you see that in the concurrences in Jacobson and all the case law going back. And what it says is, if the government lays out, if a private person lays out a brick of cocaine for an agent to look at, it's a corollary of the plain view. The contraband is in plain view. Well, yes, but the fact that it's cocaine isn't. Yes and no. I mean, in a real world, yes, it is. I mean, they knew, you know, think of the facts of Jacobson. I mean, everybody knows what's going on. It's this bundled, wrapped, white... Yes, but the question, the second question in the case was, as I understood it, whether the test of the cocaine, I understand it to be really not really a question connected to the private search issue very much. It was really, is a search of some white powder to find out whether it's cocaine a search at all, however they got the white powder? And the answer seems to be no. And so my question is, why is that? Because that's connected to my concern about, it seems to be because it's either contraband or it isn't contraband. And why does that make it not a search? Yeah, it's an odd, nuanced decision. And I agree. I think that what the Supreme Court was saying is, because they had lost all tethering at that point to property, and it was pure privacy at that point, this is pre-Jones, of course, they were saying, it's a de minimis intrusion on your privacy because everybody was staring at the brick of cocaine. You had no expectation of privacy in its chemical composition. I disagree with it, too, Your Honor. Well, I don't know. It seems like you don't have any expectation of privacy in the chemical composition of something. And you may have some expectation of privacy in exactly what's in a... A closed e-mail address. It was an e-mail attachment. It wasn't an e-mail. That matters, it seems to me. I just fundamentally disagree with that. And I think that my friend, Mr. Coe, has done an excellent job in his brief. Let's just say that. But it is an e-mail. If I send Your Honor a letter with a picture of my family trip and a brief note, family trip, it's no less a part, the picture is no less a part of the letter. But it does distinguish it from the Tenth Circuit case that Judge Gorsuch wrote an opinion in because his concern there was that when you open an e-mail, you can see all kinds of things. Well, let me quote from Ackerman about that because I don't think that's a fair characterization. The government does it, but I don't think it's fair. No one disputes an e-mail as a paper of fact for Fourth Amendment purposes. A form of communication capable of storing all sorts of private and personal details from correspondence to images, video or audio files and so much more. So I don't think it's a valid distinction. Well, okay. But here, I mean, what strikes me here is that when you, he had to open that file in order to prosecute the case. That's right. He couldn't have gone to the jury on nothing but... A hash match. A hash match. Correct. And, in fact, he couldn't even have gotten the warrant probably. The warrant spells out in detail what was in. It doesn't say there was a hash match. Correct. It goes, and it goes into detail about what was in, precisely what was in the... That's correct. ...attachment. So the question is, was there a Fourth Amendment, whether you call it expectation of privacy or property or whatever, in exactly what was in this child pornography, even though it was child pornography? That it was this child pornography with this kind of an image rather than that kind of an image. I mean, there seems to be some thread in the case law that says as long as it's contraband, you're out. But I don't know exactly where that comes from. Well, Walter doesn't say that. I didn't mean to put you off. Well, Walter doesn't say that. And, Your Honors, I mean, I think that's how it's been set up in the briefs. Is it Walter or is it Jacobson? I mean, and that's what Your Honor is getting to. We've offered a third, and we think very strong argument that it's, that the easiest way to resolve this case is a simple trespassery matter. But I understand, given the state of the law, that we're all thinking about this case. Not in the state of the law, but it doesn't feel that, I mean, you're getting pretty abstract when, it's one thing if you step foot in somebody's house, and it's another thing if you open up some bunch of electronics that doesn't feel like, you know, a thing. You're right. It doesn't feel like a thing. But the fact of the matter is, and this is all very interesting, and I was going back through that law review article I'd cited to the court about the fact that it is a thing. It is Adams. They do have maps. It is really no different. It is an absolute trespass. That double-clicking is no different than opening the apartment door. I have a question, somewhat taking you back to the first question. Okay. When you're, it seems to me what we're looking at is whatever was known to the agent that questioned, but if another court had determined that this image was in fact pornography, wouldn't it still have to be that the agent that opened it would have to know that? Because we're really looking at the conduct of an individual in deciding to open something or not, and while one may find that in some abstract place, hashtags are always reliable, unless the person that opens it knows that, they don't really have the fundamental knowledge that would be needed to do that. Yes. The answer to your question is yes and. And there's a second part that I think even strengthens it. And to quote, and I think Jacobson has a quote that's right on point for the second part. It's almost the flip side of the same coin. What Jacobson said is once frustration of the person's original expectation of privacy occurs, then the Fourth of the non-private information. So on the one hand, we're looking at what did the agent know? But the other hand, we're looking at Mr. Wilson's expectation of privacy in his closed emailed files. That has to be the central, the central prism through which we're all looking at this case. Nobody had looked at his files. Nobody had looked at his files as his Fourth Amendment chattel. So come back to what I was trying to get at, because I'm just not with you on this point, I don't think. In the sense that somehow he still has an expectation of privacy if it were established, for example, that the reliability of this hashing technology is close to 100%. Because in that instance, as the Fifth Circuit has held, and I think a couple of other courts have held, somebody has viewed that image. They haven't opened the image in the email. But the computer has told them that that image is identical to, let's say, the one that's sitting right in front of me. Let's say I have a picture, and I'm looking at that, and that's child pornography. It's been determined by a prior court. And a computer is telling me that that thing behind the little cover there is exactly like that. So why would your client have any expectation of privacy at that point in what's hidden behind the veil? Because, and let me give, I think an analogy here is helpful. So there's a run on a printing press of, I don't know, let's pick a book, Great Gatsby. There's one in your Honor's Chambers, and there's one in my house. And it's the same book. Now, I let my friend Mr. Coe borrow my copy, so he's read my copy. That's a private search of my copy. Taking away the entry to your chambers. The police, it's the same book, but it's your book. Just because somebody privately searched another copy of the book, of the Great Gatsby, doesn't mean the police can look at your copy of the Great Gatsby. They can't open it up. That's what the government is asking you to rule. That somebody else's stuff, a private search of somebody else's stuff that this court knows nothing about, when, where, why, how, nothing about, can justify years later, decades later, centuries later, a government intrusion? But isn't, oh, go ahead. What bothers me here more, and the part that I'd like to get hold of, is the fact that unlike the cocaine in Jacobson, this document has content. In other words, it also, as the warrant application shows, showed pictures of X, Y, and Z. I mean, okay, they were child pornography, but they were pictures of X, Y, and Z, not Z, Q, and R child pornography. So there, so my question is, and we all agreed that they couldn't get, I think we agreed that there was no way to get a prosecution without knowing that it was X, Y, and Z, and not Q, or R, and Z, even if both were child pornography. Does that what creates, distinguishes Jacobson, and makes this not just about matching hashtags? Yes, that's the point, is that, and we try to make it in the brief in the same, like, knowing that you have a picture of a courthouse is not the same as seeing the picture of which courthouse it is. Knowing the, seeing the films in Walter, it, seeing the picture, what does it depict? Who is it? That's what matters. I mean, knowing that you have... Unless the fact that, that this picture, whatever it is, is, is contraband, somehow backs it out of the Fourth Amendment. That's what I'm trying to understand. Suppose this picture was a picture of a murder scene, all right? And there was a hashtag that said, look, this is a murder scene, and I, I, and we're going to take all pictures of murder scenes off Facebook, or whatever, and this, and we know that this is the same picture of the murder scene as that other picture of the murder scene, all right? In that instance, it wouldn't be contraband, right? It would just be evidence. It would be a picture of a murder scene. Right. Is your argument different or the same at that point? Is the argument, it's a little hard to answer it in that way, but I think, I know exactly what the point Your Honor's making, and I, I'll point back to, to what Keith says about it, because I think the court in Keith does the best job, and I'll just, I think, what the hash, what the match says, the hash match, is that the two files are identical. It does not itself convey any information about the contents of the file. It does say that the suspect file is identical to a file someone sometime identified as containing child pornography, but the province of that designation is unknown. So a match alone indicts a file as contraband, but cannot alone convict it. That is surely why, in this case, the agent opens the file to view it, because the actual viewing of the contents provides information additional to the information provided by the hash match. This is unlike what the court found to be the case in Jacobson, where the subsequent DEA search provides no more information than had already been exposed by the FedEx. Jacobson is the opposite. Well, that was true of the first part of Jacobson, but not the second part of Jacobson. It did provide more information, but it wasn't a search. The question is, why wasn't it a search? You know, I, I think for the, the reason that we are in Walterland, because what Walter is saying is, look, they needed to see the contents of this film to prosecute. They needed to screen the film to see it was obscene to prosecute. And I think that this kind of, I can segue, and thank you for letting me go over, in, in, I can segue back to the original questions. Even if the court disagrees, in terms of my distinction between, that it has to be your property that's looked at, I hope the court, we can all agree on this latter point, that it is an expansion in the sense of Walter. Regardless, it is an expansion here because Agent Thompson, going back to Judge Whaley's point, Agent Thompson needed to open that file to see what it contained, to, you know, do the dose factor analysis, to see who it was, to put that in the warrant information. But, you know, Mr. Koch can't hold up a hash value to the jury and say, look, we got him, hash value. No, they have to open the picture. But it's not the, a, a parallel inquiry to whether it was, it was a privacy interest. That's really the question. Yes, because, and we know that it is because that's what you need, it expands upon what was known. It, it, opening the file, seeing the picture that I sent Your Honor from my family trip is not the same as knowing it's in there. How does that tell me anything more, if I have a picture of the original, the original thing that was hashed, I have it right in front of me, I know exactly to every single minute detail what's in that picture, and I have a computer that's telling me with 100 percent accuracy that this thing is identical to that, how does my opening the file tell me anything more than what I already know in terms of the content of what's in there? That, Judge Whaley answered Your Honor's question. That's not this case, because Agent Thompson didn't have that. Didn't have what? That picture sitting in front of him. He didn't know. No, I'm, I, I was trying to pose the hypothetical. Maybe this evidentiary record is deficient, right? And I, that's why I was trying to construct the most robust evidentiary record for the government that I could to see if your answer is the same you told me that it is. And I, that's what I'm just, you're losing me on that. This thing is identical. I'm, I have, with 100 percent certainty, I have a veiled image here that I'm being told is identical to this one that I'm looking at, and I can verify that this one is child pornography. Why would I, what more do I gain by opening it? Because I already know exactly what's behind the cover. It's fair enough. Fair question. But it, it had a, it had a, a prelude question, which is, I agree the evidentiary record is deficient. And I answered your Honor with a simple yes to the very first question. I agree the evidentiary record here is deficient. That being said, even in your hypothetical, it is an expansion if, let me rephrase, not an expansion. It is a search if that original file is not your child, is not your file for the same reason as my great Gatsby example is. It's yours. That's what Katz says. Every... I, I don't, I just, I don't know that maybe, do you have a better analogy? Because that one just is, doesn't ring true for me at all. I'm talking about, you know, you hand me, um, uh, you know, a Manila folder that has a document. Okay. Yeah. I got a better analogy. And it's... Okay. And I just, and I want to know what's the content. Okay. I'll give you, okay. Let's just stick with your analogy, Your Honor. Okay. I, I hand you a... Forget child pornography. I hand you a picture of this beautiful courthouse. Then I hand you a sealed envelope addressed to Judge Berzon. And I tell you, in this envelope is this same picture, okay? This envelope doesn't belong to me. It's Mr. Coe's. He wanted to send a nice note to, to Judge Berzon, okay? But it's the same picture. You can't open it. You can't open that envelope to look at Mr. Coe's picture that he's sending Judge Berzon. You know what's in there. I'm, uh, you know, positive that I'm, you know, a hash machine. You know it's in there. It's still Mr. Coe's. He still has an expectation of privacy in his closed envelope. No matter what. Okay. You're way over time. We'll give you a minute to rebuttal. And thank you very much. It was helpful. Thank you. And we'll give you a few extra minutes as well, since, uh, say, four would, would get it close. Thank you. Okay. Um, good morning. May it please the Court. Peter Coe for the United States. In applying the private search exception, what the Supreme Court in Jacobson, this Court in Toste, and other circuits have looked to is whether the agent's actions enabled him to learn more than what the private actor learned. Well, he did, right, because now he knows that this is a picture of a certain girl that looks a certain way and a certain posture and, um, with certain other people. One of them had another girl in the background and so on. So he now knows more. And not only that, he needs to know more in order to get a warrant and to prosecute. I respectfully disagree that he knows more.  He knows more. But could he prosecute this case without, no, without actually having to file to show the jury? It would be extremely difficult. Yes, it would, wouldn't it? It could be done, possibly. Because, right, yes, it would be extremely difficult. Because there's more. I don't think that's the reason it's, that makes it more. What the private actor knows, they've seen the image. They've described it. They have not described it in granular detail to say there's a leg in this direction, there's an arm in that direction. But they have described it. And they've said, this is what this is. And then you have the agent who looks at it and says, yes, that is what it is. Well, this is what it is in the sense of categorizing. First of all, we have no idea who this private person is. We don't know what directions they were following. We don't know why they thought it was child pornography. Because they didn't describe it or have a picture of it, there's no way to judge whether they were, you know, completely off the wall. And certainly there are cases in which people are completely off the wall about what's child pornography. So it's a strange thing to be relying on some unknown individual's assessment of whether something is child pornography or not and say that that doesn't give you any more information to open it up yourself and make your own judgment about whether it's child pornography and prove it to someone else. I think it confirms that it's child pornography. I don't think it's necessarily providing, even Jacobson looked to the degree to which the subsequent action by the agent exceeded the information that the private actor had looked. And leaving aside the test, it didn't at all. Let's take a dog sniff case, right? You have a dog sniff. That's not a search, right? Correct. Okay. Does that mean, and the dog sniff alerts and says there's contraband in there. All right. Can the police then just open the box without a warrant and look at what's in it even though they now know there's contraband in there? In the dog sniff context? Yes. Can they open the box? They may have probable cause to get a warrant, but can they open the box? In most circumstances, they would have to get a warrant. But are there exceptions? Why? Why? Because there's something, you know something more when you open the box than even knowing that there's some contraband in there. I don't believe a dog sniff provides information about the content to the same degree that a hash match does when somebody has viewed an image, determined through an algorithm that this is the hash that uniquely applies to this image and then this same hash later shows up on a different image. Do you know there's a Supreme Court, this is out of the blue and you probably don't, but there's a Supreme Court case called McKinney v. Alabama where the question was whether once something is determined to be obscene in some proceeding, whether the defendant in the case, whether that's enough to convict the defendant in the case or whether the defendant gets to individually have his own right to prove whether it's obscenity or not. And the answer was yes. The individual has to be able to litigate the obscenity. You can't just take a determination from somewhere else. And that's what you're asking us to do. I don't think so. Because some unknown person at some unknown time, following some unknown set of protocols, determined that this is child pornography, opening it up to see whether it's child pornography doesn't give you any more information. I think we're talking about different stages. It sounds like, and I'm not familiar with McKinney, I apologize, but it sounds like that is a trial issue as far as the sufficiency of the proof and your right to contest the evidence against you. But what underlies that, of course, is that what's obscenity and what's child pornography is not an on-off switch. It's often quite debatable, right? Correct. But you're asking us to treat it as an on-off switch. No. I don't believe that the person, the private actor, I mean, let's be frank, in 99% of these cases child pornography is pretty easy to spot. Are there certain gray areas? Yes, absolutely. But we're not talking about the private actor has to be correct about what they're reporting. That's not the requirement. I've found something. I think it's suspicious. I think you need to look at it. Well, that's right. Then you need to look at it. And you're saying they don't need to look at it. No, I'm saying they get to look at it to the same extent that the private actor looked at it. But they're not looking at it to the same... You're saying that looking at it doesn't add anything. And looking at it, of course, does add something. It confirms the original statement by the private actor, which is this is an image of prepubescent minors in sex acts. What is your response to the argument that there really wasn't ever a search by Google? That all they've done is identify something, but they haven't searched it. And they're going to leave it to the government to search it. They've just identified it meets a hashtag, but they can't open it. They don't open it. They just say it matches a hashtag we have. But the first search is actually the one that's done in San Diego. So it wasn't a private search. They just identified it or seized it or whatever it is. They took it off the production line. They sent it to the government, but they haven't done any more with it. I... And this is where I think the private search exception, the shorthand of it, is a bit of a misnomer. I'm not sure there needs to be a Fourth Amendment search by the private actor. I'm not sure why they... If they come into information that they feel law enforcement should know and they provide it to law enforcement, why that wouldn't fit into the exception? So that's, I think, my first response to that. My second response is... I believe there's still a search when Google looks in somebody else's email account, either under a reasonable expectation of privacy theory, if Google were a state actor, or a trespass theory. I mean, in some way, they are... I mean, I'm not a computer scientist, but, you know, they are processing a file. They are going in and reading the file. Those zeros and ones are somewhere on a medium that they're reading and pulling out. That seems like a physical trespass at some level. So I would say that there's a search, but I'm not sure a search is required necessarily to trigger this, not in Fourth Amendment terms. I think it's a lay... If that's true, what... And maybe the search term is not particularly helpful, but if that's true, what triggers the knowledge that is already so public that the officer in San Diego can rely on? I'm not sure. If they haven't searched it. In other words, now you're telling me they haven't searched it. You don't really have to have a search. So all they've done is say, we've had something come across our computers that we identify as child pornography, and here it is. But what... Maybe I'm not understanding the question correctly, but my understanding... Sometimes I'm very inarticulate, too. I apologize. I'm a little... I think the question is... I thought I was pretty clear.  Google asked for this file to not open it, right? Mr. Wilson's file. It's essentially the point that your opponent made that there's a difference between opening that file and opening this file. Google did not look at this file. So in that sense... And in that respect, this was different from both Walters and Jacobson, because this file, the private person didn't look at. That is correct, but I don't think that is the standard. Was that a good approximation? Better than I did. It's certainly correct that Google did not open Mr. Wilson's file, so that's undisputed. Well, isn't that a significant difference from the private search cases in general in the sense that they seem to say that you can replicate what the private party did, but they don't seem to say that you can do something the private party never did, which is open this file. I disagree with that. The standard is not whether they physically replicated what the private actor did. And in fact, in Toste, that's exactly what did not happen. Toste, it was the private employee of the computer store who looked at the thumbnails, and then the detective came and said, blow up the thumbnails so I can see them larger. No, but he saw the thumbnails. He saw the thumbnails as well. He replicated what the private party did. But then he went further. Look at the thumbnails. What? He went further in Toste. Well, that's right, but he replicated what the private party did. He looked at the thumbnails. Then the question is whether looking at the thumbnails gives you authority to look at the larger picture, which is a separate question. But in here, they didn't replicate what the private party did. I... He... I read Toste, and I apologize if, you know, I disagree, but Toste, they blew up the images, which is not something the private actor ever did by himself. He only did it with the agent when the agent or the detective said, make those bigger so I can see them. That's consistent with the standard as it's been articulated all along. Isn't there some fundamental difference between looking at a smaller picture and looking at a big picture of the same thing as opposed to looking at a blank nothing, which is just a little attachment says attachment, um, and opening it? Well, I think my point is that physical replication is not what's required here. The agent is not limited to doing physically exactly what Google did or any... So what case is parallel in this regard? I.e., what the agent did is not what the private person did. Jacobson, for one. The agent in that case went further. He tested the drugs. Well, that's the second part of Jacobson, which said that testing it, which, as I read it, says testing cocaine is not a search, not because it's an expansion of the search or anything else. It's just not a search. Um, if you find, no matter how you get the cocaine. Is that what it's saying? It's just not a search. That portion of Jacobson, I believe, said, was geared towards it did not exceed the search to a meaningful degree. No, it said it was not a search. So testing cocaine is not a search. That's what it said. In high verba. It does say that there is no legitimate expectation of privacy in cocaine because, in the context of a drug test, because all the drug tests can tell you is it's cocaine and nothing else. All right, so is that your... This is really what I was talking about before. Is that concept fundamental to your position here? That is, as long as it's child pornography, it's an on-off switch. Um, and it's not. So it doesn't matter. The fact that this is contraband one way or another, it doesn't make any difference. Not to our argument. Our argument is that the agent's actions did not enable him to learn more than what the private actor learned. Now, did they physically replicate the same actions? No. That position... So why did he put in the... Why can't he prosecute it the same way? And why did he have to open it to prosecute? He learned something more, something that'll enable him to prosecute it, which he couldn't have done otherwise. Knowledge can be circumstantial. It can also be direct. Just because you want to improve the case or improve the war... I understand, but obviously that difference is enough to make something, uh, the difference between possible, probable cause and something that you can actually prove beyond a reasonable doubt. In other words, there's some kind of content there that is enabling you to prosecute when you couldn't prosecute otherwise because you can't prosecute a hashtag. I-I didn't say we couldn't prosecute. I said it would be extremely difficult. Well... I think it would be. Don't get me wrong. I think it would be, but I think you could, in theory, prosecute a case off a hashtag. Right. It would be much more difficult. Much, much, much more difficult. And therefore, he did open it up and put that in the warrant and he did use it to prosecute. And to do it without it  an entirely different thing than what he did. So it must have some content. Even if that is the case, look, Jacobson still looked to the degree to which the agents exceeded the scope of the initial search. And what you're talking about here is basically the difference of if Google has had looked at that image after they hash matched it, we would have factual equivalence, physical factual equivalence. Suppose this child pornography photo was child pornography, but in the background it said, Make America Great Again or, you know, Peace Now or something. There was a, there was a, it had other content in this picture. Would that make any difference? And, and, and he, and, and, and is there a privacy interest in whether your, your child pornography has Peace Now or Make America Great Again? Again, I don't believe so because I think the core of the Fourth Amendment is reasonableness and what we're talking about is granular detail versus this is what it is. I mean, I don't think the Fourth Amendment requires that the private actor report. This people really wants to keep secret the fact that he prefers Peace Now over Make America Great Again even in his child pornography pictures. Well, that's not what the government's interested in. That's not the reason that this is of interest for prosecution. But, but that's, but this is a privacy interest. It's not what the government's interested in. I'm really not sure how to answer the question on that one. I, I'm not real sure what the, Can, can, can I ask you to move then to a different question? Yes. I guess I'd like to hear your defense of the, the evidentiary record in this case. Because, even if you got past the hurdles that I think you're encountering with this version, it seems to me when we look at what, because basically what we have on the sort of technology front is this declaration from the Google person, this sort of one, what is it, one and a half pages? Yes. So, give me your defense as to why this, you think this is adequate for us to, again, I'm sort of receptive to the conceptual argument you want to make. I think you're getting resistance. But, even for me, I look at this and I would need far more explanation of how reliable the hash matching technology is before I could validate this search. Certainly, this evidentiary record could be a lot more robust. But, I think in context, the reliability of hashing was never disputed below. And, the declaration does, on its face, say how hashing works and that it is reliable. That they considered a digital fingerprint, I'm over, well, I'll answer your question later on. Based off of that, the district court made a finding, which I believe has to be reviewed for clear error. And, the finding is plausible. So, on that record, I do believe that finding has to be upheld. But, to get back to your point, certainly, if it had been disputed below, I think there would have been a lot more evidence about hashing and how it works and its reliability. But, that just was not an issue that was raised below. If the court has no other questions, I'll submit.  Thank you. You've been helpful. Sir, a minute, one minute. I'm prepared to submit. I just wanted to give the court one, just to correct one thing that my friend just said. Is that, at ER page 135, below, and I agree that the record here is sparse at best, but, the trial lawyer said, the government is essentially asking this court to hold that the accuracy and reliability of Google's hash database is beyond dispute. That determination is one for a judge when asked to issue a search warrant. To borrow an analogy, if the Pope called from a home and reported contraband, officers would still need a warrant to search the home. So, I do think this issue was flagged. But, with that, I'd submit unless the court has questions. That's ER 135. Thank you very much. Thank you both for an interesting argument in a hard case. United States v. Wilson is submitted. We will go to
judges: Berzon, Watford, Whaley